**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LEONA CLARK, o.b.o. S.R.C., ) | |
| ) | CASE NO. 5:12-cv-01745 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| MICHAEL J. ASTRUE, ) | MAGISTRATE JUDGE GREG WHITE |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | **REPORT & RECOMMENDATION** |

Plaintiff Leona Clark ("Clark"), on behalf of her minor daughter, S.R.C., challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying S.R.C.'s claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On June 25, 2008, an application was filed on behalf of S.R.C., a child under the age of eighteen, with an alleged disability onset date of April 1, 2003. (Tr. 21.) Her application was

denied both initially and upon reconsideration. *Id*. Clark timely requested an administrative hearing. *Id*.

On February 3, 2011, an Administrative Law Judge ("ALJ") held a hearing during which S.R.C., represented by counsel, and Clark testified. (Tr. 21.) On February 25, 2011, the ALJ found S.R.C. did not have an impairment or combination of impairments that met or functionally equaled the listings. (Tr. 24.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### *Personal Evidence*

S.R.C. was born in May of 1998. She was a twelve year old "school-age" child pursuant to 20 C.F.R. § 416.926a(g)(2)(iv) at the time of the administrative hearing. (Tr. 24.)

## III. Standard for Disability

To qualify for SSI benefits, an individual must demonstrate a disability as defined under the Act. "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At step two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At step three, disability will be found if a child

has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d).

To determine whether a child's impairment functionally equals the listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. § 416.926a(a). The Commissioner will consider how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [ ]self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairments functionally equal the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d). To receive SSI benefits, a child recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

A "marked" limitation is one which seriously interferes with functioning. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

3

If an impairment is found to meet, or qualify as the medical or functional equivalent of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

### IV. Summary of Commissioner's Decision

The ALJ made the following findings regarding S.R.C. in the February 25, 2011, decision:

1. The claimant was born [in] 1998. Therefore, she was a preschooler on June 25, 2008, the date the application was filed, and is currently a school-age child (20 C.F.R. 416.926a(g)(2)).[1]

2. The claimant has not engaged in substantial gainful activity since June 25, 2008, the application date (20 C.F.R. 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder; a reading disorder; written expression disorder; low average to borderline intellectual functioning; and a history of asthma and allergic rhinitis (20 C.F.R. 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since June 25, 2008, the date the application was filed (20 C.F.R. 416.924(a)).

(Tr. 24-36.) The ALJ found that S.R.C. had less than marked limitations in the following four domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and, health and physical well-being. *Id*. She further found S.R.C. had no

---

[1] The ALJ's statement that S.R.C. was a preschooler on the date of the application is incorrect as S.R.C. was ten years old on that date. A child transitions from a preschooler to a school-age child at age six. 20 C.F.R. § 416.926a(g)(2).

limitations in the remaining two domains: moving about and manipulating objects, and caring for one's self. *Id*.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Clark argues that the ALJ erred because: (1) she failed to give considerable weight to the opinion of S.R.C.'s teachers; and, (2) she substituted her own opinion for that of medical and educational professionals. (ECF No. 15.)

*Medical Professionals*

Clark asserts that the ALJ erred by: (1) failing to explain how much weight she gave to the findings of a treating physician, Morton Saunders, D.O., (2) failing to give valid reasons for rejecting the functionality assessment of social worker Ruby Akhigbe, and (3) failing to point to specific parts of the record in support of her finding that a portion of the opinion of David J. Coleman, Ph.D., a consultative examiner, was inconsistent with the record.  (ECF No. 15 at 13-15.)

**1.  Dr. Saunders - Treating Physician**

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 416.927(c)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[2]

---

[2]  Pursuant to 20 C.F.R. § 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

> With respect to Dr. Saunders, Clark's argument is not entirely clear:
>
>> In this case, the ALJ purports to give weight to Dr. Saunders' opinions, except for his opinion that SRC's ADHD has been a major issue throughout her life (Tr. 28). The ALJ argues that this finding is not entitled to weight because SRC is able to control her symptoms with medications (*Id.*).  The ALJ points to no evidence to support this contention and also fails to explain how much weight she in fact gave to Dr. Saunders' findings.

(ECF No. 15 at 13-14.)

It is notable that Clark does not identify any specific portion of Dr. Saunders' findings that was clearly rejected by the ALJ beyond the aforementioned generic statement that S.R.C.'s "ADHD has been a major issue throughout her life."  First, the ALJ clearly accepted that S.R.C. suffered from ADHD, as it is listed among her severe impairments.  However, it is well-established that a diagnosis alone does not indicate the functional limitations caused by an impairment.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).  *See also Vance v. Comm'r*

---

supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

*of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Dr. Saunders's statement that ADHD was a "major issue," though given "less weight" by the ALJ, does not say anything specific about S.R.C.'s functional capabilities as they relate to the six domains. Dr. Saunders did not complete a functional capacity assessment and, as such, its is impossible to ascertain whether Dr. Saunders believed S.R.C.'s ADHD resulted in moderate, marked, or extreme limitations as defined by the Social Security Administration's regulations.

Finally, the ALJ offered two reasons for giving less weight to the "major issue" statement: (1) on medication, S.R.C. was able to control her symptoms; and (2) the results of S.R.C.'s Evaluation Team Report demonstrate that S.R.C.'s symptoms are not as severe as alleged. (Tr. 28.) In support, the ALJ refers back to an earlier part of the decision, wherein she specifically cites a teacher evaluation discussing the impact of medication on S.R.C.'s abilities. (Tr. 26, 28, citing Exh. 8E.) In the cited exhibit, S.R.C.'s teacher noted that "[S.R.C.] has ADHD. She had a lot of problems staying on task and completing her work. She was put on a Rx and showed a lot of improvement." (Exh. 8E, Tr. 180-87.) Her attendance, as well as her grades, increased as well. *Id.* The ALJ also referred back to her earlier discussion of the Evaluation Team Report:

> The record also contains an Evaluation Team Report. The claimant's Evaluation Team Report suggested [ADHD] based on information from claimant's teacher and mother (Exhibit 15E, p. 29). The Report noted that the claimant's conversational proficiency seemed typical for her age (Exhibit 15E, p. 23). It stated that the claimant "was exceptionally cooperative throughout the examination; her activity level seemed typical for her age" (Exhibit 15E, p. 23). The [E]valuation Team Report went on to state that the claimant "appeared at ease, comfortable, and attentive to the tasks during examination" (Exhibit 15E, p. 23). She "responded promptly, but carefully, to test questions, generally persisting with difficult tasks" (Exhibit 15E, p. 23). The Evaluation Team Report noted that the claimant was not taking her medication at this time. The Evaluation Team Report also notes that the claimant's behavior in the classroom

>is very passive (Exhibit 15E, p. 32). While she exhibits some inattention, she does not disrupt the learning of others and is able to follow classroom rules and procedure without difficulty (Exhibit 15E, p. 32). The Report states that the claimant's "teacher does not have any concerns for behaviors associated with conduct disorder or oppositional disorder" (Exhibit 15E, p. 36).

(Tr. 26-27.)[3]

Clark's assertion – that the ALJ failed to set forth good reasons for rejecting Dr. Saunder's statement – is without merit.

### 2. Social Worker

Clark finds fault with the ALJ's rejection of the functional abilities assessment given by Ruby Akhigbe, a social worker. (ECF No. 15 at 14.) Clark's argument on this point states:

>The ALJ also found the observations of SRC's social worker, Ruby Akhigbe, to be credible but discredits her findings regarding SRC's functional abilities (*Id.*). The only rationale provided by the ALJ for rejecting Akhigbe's opinion is that SRC's testimony indicates that she is not as limited as Akhigbe alleges. The ALJ points to no specific testimony to support this, nor to any evidence in the record. Furthermore, she found Leona and ... SRC's testimony only partially credible, so it is puzzling that she would rely on the testimony as the sole reason for rejecting Akhigbe (Tr. 28-29).

(ECF No. 15 at 14.)

An ALJ is not required to set forth good reasons for rejecting the opinion of a social worker. The opinion of a social worker is not entitled to any particular weight, as it does not constitute an "acceptable medical source" but is merely an "other source." *See* 20 C.F.R. § 416.913(a), (d); *Hickox v. Comm'r of Soc. Sec.*, 2010 WL 3385528 (W.D. Mich. Aug. 2, 2010) report and recommendation adopted, 2011 WL 6000829 (W.D. Mich. Nov. 30, 2011). "[The] opinions [of other sources] are not entitled to deference under the treating physician rule, which

---

[3] Although the ALJ incorrectly states that the Evaluation Team Report found S.R.C. was not taking medications at that time (Tr. 251), the remaining recitation of the report is accurate.

10

does not apply to the opinions of social workers and physician's assistants." *Hickox*, 2010 WL 3385528 at *6 (*citing Geiner v. Astrue*, 298 F. App'x 105, 108 (2nd Cir .2008); *Eldridge v. Apfel*, 1999 WL 196564, at * 2 (6th Cir. Mar.30, 1999) ("[A]lthough the administrative judge is required to consider evidence presented by certain 'acceptable medical sources' including psychiatrists and psychologists, a social worker is simply considered an 'other source' whose opinion the administrative law judge may consider."); *Boyett v. Apfel*, 8 F. App'x 429, 433 (6th Cir. 2001) ("The regulations ... clearly outline who can be an acceptable medical source and social workers are not included."); *Ferguson v. Comm'r of Soc. Sec.*, 1996 WL 341147, at * 1 (6th Cir. June 19, 1996).

 As explained by the *Hickox* court, because the opinions of social workers fall within the category of information provided by "other sources," the regulations merely require that the information be "considered." *Hickox*, 2010 WL 3385528 at **6-7. That court concluded that the consideration standard "is not a demanding standard, and it was easily met here. The ALJ expressly considered the opinions offered by [the social worker.]" *Id*. In the case at bar, the ALJ plainly did not ignore the social worker's opinion. It was expressly addressed in the decision. (Tr. 28-29.) Therefore, the "consideration" requirement was satisfied. The fact that Clark may be dissatisfied with the ALJ's explanation does not afford any basis for relief. Pursuant to Social Security Ruling ("SSR") 06-03p, "there is a distinction between what an adjudicator must *consider* and what the adjudicator must *explain* in the disability determination or decision..." While SSR 06-03p goes on to state that "the adjudicator generally should explain the weight given to opinions from these 'other sources,'" courts have found that this ruling does not *require* any explanation, let alone a heightened level of explanation as required with treating sources.

11

*See, e.g., Hickox*, 2010 WL 3385528 at \*7; *Smith v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 39785, 8-9 (E.D. Va. Apr. 22, 2010) ("while an ALJ is required to consider all of the relevant evidence in the record, there is no requirement that the ALJ expressly discuss each piece of that evidence.... Indeed, such a requirement, if it existed, would impose an insuperable burden on the adjudicatory system of the Social Security Administration. The mere fact that the ALJ did not discuss one, several, or even many treatment records cannot therefore justify the conclusion that the ALJ did not consider those records."); *James v. Astrue*, 2012 U.S. Dist. LEXIS 50064 at \*\*39-40 (M.D. Tenn. Mar. 21, 2012) ("The Court agrees with the distinction made in *Hickox* that the word 'should' does not create a mandatory duty with which the ALJ must comply.")

The ALJ addressed Akhigbe's opinion as follows:

> The undersigned notes the assessment offered by the social worker, Ruby Akhigbe, L.I.S.W., in Exhibit 15F. The undersigned accepts the observations included in that assessment, as well as the notation that the claimant's symptoms improved with medication (Exhibit 15F, p. 34). However, the undersigned does not accept Ms. Akhigbe's assessment as to the claimant's functional abilities (Exhibit 15F, p. 32). The claimant's own testimony at hearing demonstrates a higher level of functioning than that put forth by Ms. Akhigbe. The undersigned gives partial weight to the testimony of the claimant and her mother, particularly finding credible statements regarding the claimant's activities of daily living, improvements with treatment, and extra help from her mother and teacher (Exhibits 4E and 11E). As discussed below, the claimant engages in many activities that are typical for a girl her age. Moreover, the evidence suggests that the claimant is able to control her symptoms with the proper use of medication.

(Tr. 28-29.)

Based on the above cited law, it is apparent that an ALJ is not required to discuss the opinion of a social worker to satisfy the consideration standard. Here, nonetheless, the ALJ spent a full paragraph discussing Akhigbe's opinion. (Tr. 28-29.) Therefore, the ALJ carried out her duty to consider this evidence.

### 3. David J. Coleman, Ph.D. - Examining Source

Clark asserts that the ALJ erred in her treatment of the opinion of Dr. Coleman, a consultative examining psychologist. (ECF No. 15 at 14.) While acknowledging that the ALJ gave significant weight to Dr. Coleman's opinion as it relates to S.R.C.'s IQ scores, Clark takes issue with the ALJ discrediting that portion of Dr. Coleman's opinion finding that S.R.C. functions only at 3/4 of the age appropriate level in personal and behavioral pattern skills. *Id*. Coleman avers that the ALJ's failure to provide "specific reasons" for rejecting a portion of Dr. Coleman's opinion constitutes error. *Id*.

Opinions from agency medical sources, including psychological consultants, are considered opinion evidence. 20 C.F.R. § 416.927(e). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(e)(2)(ii). More weight is generally placed on the opinions of examining than on non-examining medical sources. *See* 20 C.F.R. § 416.927(c)(1). The ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician. *See* 20 C.F.R. § 416.927(c), (e).

Although, "[a]dministrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996

WL 374180, *2 (Jul. 2, 1996). However, this requirement should not be confused with the standard required for explaining the weight ascribed to a treating physician. The Sixth Circuit has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one examining physician's opinion over another. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496 (6th Cir. 2006). The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> > [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.* at 507-508 (citations omitted).

The ALJ addressed Dr. Coleman's opinion as follows:

> The undersigned gives significant weight to the opinions offered by the consultative examiner, Dr. Coleman, regarding the claimant's IQ scores (Exhibit 2F). However, the undersigned does not agree with Dr. Coleman's assessment that the claimant functions at only 3/4 of the age appropriate level in personal and behavioral patterns skills. That conclusion is inconsistent with the record as a whole and the claimant's demonstrated abilities, discussed below.

(Tr. 28.)

The ALJ's decision fully complies with the procedural requirements set forth by the regulations as it pertains to non-treating, examining physicians. The opinion makes sufficiently clear that the ALJ believed S.R.C.'s abilities, as described in the record, to include the Evaluation Team Report compiled by school psychologist Heather A. Zimmer, were greater than

those found by Dr. Coleman.[4]  This satisfies the explanation requirement of the regulations.  Furthermore, Clark has failed to argue the relevance of the ALJ rejecting Dr. Coleman's opinion.  Specifically, it is unclear whether Dr. Coleman's assessment – that the claimant functions at only 3/4 of the age appropriate level in personal and behavioral patterns skills – would result in a finding that S.R.C. had marked limitations in two domains or an extreme limitation in one.

*Teachers*

Clark argues that while claiming to ascribe significant weight to the opinions of S.R.C.'s teachers, the ALJ found that S.R.C.'s low grades were caused by absenteeism and a lack of motivation.  (Tr. 28.)  Clark also asserts that the ALJ failed to explain how much weight was ascribed to the remaining opinions contained in the teacher questionnaire.  (ECF No. 15 at 10-11.)  Clark contends that the ALJ was not justified in rejecting limitations contained in the questionnaire, though she does not identify any specific limitation.  (ECF No. 15 at 12.)  Clark concludes that the ALJ's "failure to properly explain the weight she gave to the [teacher] opinions and provide sufficient reasons for doing so constitutes error and a remand is warranted."  (ECF No. 15 at 12.)

Clark asserts that, in the context of this case, an ALJ must treat the opinion of a teacher similar to that of a treating physician.  However, the opinion of a teacher is not entitled to any particular weight, as a teacher does not constitute an "acceptable medical source" but is rather an "other source."  *See* 20 C.F.R. § 416.913(d)(2).  In support, Clark cites *Richardson v. Massanari*, 2001 U.S. Dist. LEXIS 17269 (N.D. Iowa Sept. 27, 2001), which noted that "[i]n this sense, a

---

[4] The Court notes that school psychologists constitute an "acceptable medical source" under the regulations.  20 C.F.R. § 416.913(a)(2).

15

teacher can be aptly analogized to a treating physician whose opinion is given considerable weight in the traditional analysis because of the physician's ongoing relationship with his patient.") While this Court does not dispute that a teacher's opinion may be significant and, at times, perhaps worthy of more weight than that of a physician or psychologist, neither Sixth Circuit precedent nor the regulations impose any heightened duty of articulation when it comes to consideration of the weight assigned by an ALJ. As discussed above, the opinions of "other sources," such as teachers must only be "considered." It cannot reasonably be argued here that the ALJ did not consider such opinions. In fact, the teacher questionnaire and Evaluation Team Report (Exhs. 8E & 15E) were cited extensively in her decision. (Tr. 26-28, 31, 33-35.) Furthermore, Clark does not identify the specific teacher opinions that the ALJ allegedly ignored. The Court cannot find that the ALJ violated any procedural requirements while considering the school records. As such, Clark's assignment of error is without merit.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White  
United States Magistrate Judge

Date: April 10, 2013

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**